UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

NOV 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STANLEY BAPTISTE,          :
                          :
        Plaintiff,         :
                          :
                          :
    v.                     : Civil Action No. 1:07-cv-00959(CKK)
                          :
                          :
BUREAU OF PRISONS, et. al. :
                          :
        Defendants.        :
                          :
. . . . . . . . . . . . . . . . . . . . . . . . . :

### PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS, AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIDAVIT IN SUPPORT

**PLEASE TAKE NOTICE,** that plaintiff, Stanley Baptiste, opposes defendants "Motion To Dismiss, and moves pursuant to Rule 56 of the Federal Rules of Civil Procedure "For Summary Judgment" against the herein named defendants and grounds asserts the following.

### STANDARD FOR REVIEW

Pursuant to the Privacy Act, an agency must maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as to assure fairness to the individual in the determination. 5 U.S.C. § 552a(e)(5). An individual may bring suit against an agency which fails to meet this standard. See 5 U.S.C. § 552a(g)(1)(C). In order to recover monetary

damages under the Privacy Act, a plaintiff must assert that
an 'adverse' determination was made respecting plaintiff.
That is, a plaintiff must allege inaccurate records, agency
intent, and an "adverse determination."  Toolsprashad v.
Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002)(quoting
5 U.S.C. § 552a(g)(1)(C).

    The plaintiff has the burden of proving that the agencies'
actions in violating the Privacy Act were intentional or willful.
Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984);
5 U.S.C. § 552a(g)(4).  To meet this burden, plaintiff "must
prove that the offending agency acted" without grounds for
believing [its actions] were lawful or that it 'flagrantly
disregarded' the rights guaranteed under the Privacy Act.
Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir.
1987).

## ARGUMENT

**I.  PLAINTIFF CLAIMS THAT NONE OF THE QUESTION RECORDS HAVE BEEN
PROPERLY EXEMPTED, NOR IDENTIFIED AS INVESTIGATORY MATERIAL
COMPILED FOR LAW ENFORCEMENT PURPOSES.**

    The Privacy Act authorizes agencies to exempt from its
access and amendment provisions all systems of records consisting
of "investigatory material compiled for law enforcement purposes."
Subsection (j)(2) empowers law enforcement agencies to exempt
from subsection (d) certain types of criminal records systems,
including those consisting of "information compiled for the
purpose of a criminal investigation . . . and associated with

-2-

an identifiable individual," 5 U.S.C. § 552a(j)(2)(B)(1988),
while section (k)(2) permits any agency to exempt from subsection
(d) any other records system containing "investigatory material
compiled for law enforcement purposes," 5 U.S.C. § 552a(k)(2)
(1988).

Although both subsections (j) and (k) refer to "system
of records, the Bureau of Prisons exemption regulation, 28
C.F.R. 16.97(a)(4), respecting its ICRS, nor ICE (formerly
the INS) exemption regulation, 28 C.F.R. § 16.99(a), respecting
its "CRS," does remove their entire filing systems from the
requirements of the ACt; rather, BOP "ICRS," and ICE "CRS"
documents qualify for exemption only if they constitute law
enforcement records within the meaning of the statute. Vymetalik
v. F.B.I., 785 F.2d 1090, 1095 (D.C. Cir. 1986). Accordingly,
the Bureau of Prisons and the Department of Homeland Security
(ICE) bear the burden of demonstrating a law enforcement purpose
for each record that they have claimed to be exempted in this
case.

In making this determination, this court should borrow
the test for "law enforcement purpose" that was devised in
Pratt v. Webster, 673 F.2d 408, 420 (D.C. Cir. 1982), to evaluate
applicability of these exemption.

Under the **Pratt test**," records kept by a law enforcement
agencies "must meet two criterions" in order to qualify as

-3-

law enforcement records.  First, "the agency's investigatory
activities that give rise to the documents sought must be related
to the enforcement of federal laws or to the maintenance of
national security."  Pratt, 673 F.2d at 420.  An agency does
not satisfy this requirement when "merely engaging in a general
monitoring of private individuals activities;" rather, the
agency must demonstrate a connection of a "possible security
risk or violation of federal law."  Id., cf., Shaw v. FBI,
749 F.2d 58, 64-65 (D.C. Cir. 1984).  Second, the "nexus" between
the investigation and one of the agency's law enforcement duties
must be based on information sufficient to support at least
'a colorable claim' of its rationality.  The Privacy Act exempts
"reports identifiable to an individual compiled at any stage
of the process of enforcement of the criminal laws from arrest
or indictment through release from supervision.  Id., § 552a(j)
(2)(C).

    Neither the Bureau of Prisons or "ICE" meet the two point
criterion test setforth in the **"Pratt test,"** because none of
can be considered as dealing with investigatory activities
that related to the enforcement of federal laws or to the
maintenance of national security.

    The proper analysis of recompiled records under the Privacy
Act requires an additional layer of analysis.  In creating
subsection (j) and (k) of the Privacy Act, Congress did not
delineate the agency interests justifying exemption as it had

-4-

in the FOIA.  Instead, with one exception, Congress granted
agencies broad discretion to exempt all law enforcement record
systems from the Act's access and amendment provisions, provided
that the agencies promulgate their exemption rules in accordance
with the rulemaking provisions of the APA, and provide in those
rules statements of the reasons for the exemptions.  Thus,
in determining whether treatment of the Bureau of Prisons and
"ICE" documents as a law enforcement record would promote the
purposes underlying the law enforcement exemption, we must
first look to the reasons that both these agencies have given
for promulgating that exemption.

The Federal Bureau of Prisons has promulgated a rule to
exempt its system of inmate records from the amendments
provision of the Privacy Act, 5 U.S.C. § 552a(e)(5); [See
Sellers v. BOP, 959 F.2d 307, 309 (D.C. Cir. 1992), and a rule
providing that its "Inmate Central Records System" is not
subject to correction or amendment, 28 C.F.R. § 16.97(j)(k)(2):

> (j) The following system of records is exempted pursuant
> to 5 U.S.C. § 552a(j) from subsections (e)(1) and (e)(5):
> Bureau of Prisons Inmate Central Records System,
> (Justice/BOP-005).
>
> (k) These exemptions apply only to the extent that
>  information in this system is subject to exemption
> pursuant to 5 U.S.C. § 552a(j).  Where compliance would
> not appear to interfere with or adversely affect the law
> enforcement process, and/or where it may be appropriate
> to permit individuals to contest the accuracy of the
> information collected, e.g., public source materials,
> or those supplied by third parties, the applicable
> exemption may be waived, either partially or totally,
> by the Bureau.  Exemptions from the particular subsections
> are  justified for the following reasons:

(2) From subsection (e)(5) because in the collection and maintenance of information for law enforcement purposes, it is impossible to determine in advance what information is accurate, relevant, timely and complete.  Data which may seem unrelated, irrelevant or incomplete when collected may take on added meaning or significance during the course of an investigation or with the passage of time, and could be relevant to future law enforcement decisions. In addition, because many of these records come from the courts and other state and local criminal justice agencies, it is administratively impossible for them and the Bureau to ensure compliance with this provision.  The restrictions of subsection (e)(5) would restrict and delay trained correctional managers from timely exercising their judgment in managing the inmate population and providing for the safety and security of the prisons and the public.

"ICE" (formerly the INS) has also promulgated rules implementing exemption in 28 C.F.R. § 16.99(b)(8):

(b) Exemptions from the particular subsections are justified for the following reasons:

(8) From subsection (e)(5) because in the collection of information for law enforcement purposes it is impossible to determine in advance what information is accurate, relevant, timely, and complete.  With the passage of time, seemingly irrelevant or untimely information may acquire new significance as further investigation brings new details to light and the accuracy of such information can only be determined in a court of law.  The restrictions of subsection (e)(5) would restrict the ability of trained investigators and intelligence analysts to exercise their judgment in reporting on investigations and impede the development of criminal intelligence necessary for effective law enforcement.

After reviewing 28 C.F.R. § 16.97(j)(k)(2), the BOP's promulgated rules implementing exemption, and "ICE's" promulgated rules implementing exemption in 28 C.F.R. § 16.99(b)(8), there is nothing contained in either of these sections that rationally exempts the challenged reports by plaintiff.  None of these reports qualify as law enforcement records consisting of

"information compiled for the purpose of a criminal investigation and therefore, these false reports are not exempt pursuant to 5 U.S.C. § 552a(j)(2) & (k)(2). Furthermore, these false reports have never been classified or justified as being exempt.

The problem of assuring that allegations of exempt status are adequately justified is the most obvious and most easily remedied flaw in current procedures. It may be corrected by assuring government agencies that courts will simply no longer accept conclusory and generalized allegations of exemptions, such as the defendants are attempting to treat this Court, but should require a relatively detailed analysis in manageable segments. The need for adequate specificity is closely related to assuring a proper justification by the governmental agency. Sterling Drug, Inc. v. F.T.C., 146 U.S.App.D.C. 237, 450 F.2d 698 (1971); Vaugh v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973). In a large report it is vital that the agency specify in detail which portions of the report are allegedly exempt. This could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the report. Such an indexing system had been established as a result of the U.S. Court of Appeals for the District of Columbia Circuit decision in **Vaugh v. Rosen, 157 U.S.App.D.C. 340 (1973),** which in essence, created what is now called the "**Vaugh Index**."

-7-

Since the burden of determining the justifiability of a government claim of exemption currently falls on the court system, there is an innate impetus that encourages agencies to automatically claim the broadest possible grounds for exemptions for the greatest amount of reports as has been illustrated by this case.

What the defendants have done in the present case is simply point to selected, clearly exempt portions, ignore the amendable "false reports" in an attempt to persuade this Court that the entire mass is exempt, when in actuality, they are not exempt. Thus, as a tactical matter, it is conceivable that the defendants are attempting to gain an advantage by claiming overbroad exemptions to false reports that are not truly exempt.

Had the defendants employed the "Vaugh Index" as they are required to do, in this case, the reports which are in dispute could have easily been identified as whether they are exempt and whether they were properly exempted for the purposes which were related to the enforcement of federal laws or to the maintenance of national security.  Therefore, in light of the foregoing discussion, it is evident that the disputed reports are not:(1) reports that qualify as law enforcement records consisting of "information compiled for the purpose of a criminal investigation; and (2) these disputed reports have never been classified or justified as being exempt from amendment or corrections.

-8-

Finally, the Bureau of Prisons has established a procedure in BOP Policy Statement # 5880.11, September 8, 1997, pages 19 & 20, ¶c, that **waives the exemption for amendment and correction of inaccurate information**, that allows a "inmate the right to challenge any inaccurate information that may be contained in his or her "Inmate Central File," and to have this inaccurate information corrected. BOP Policy Statement # 5880.11, September 8, 1997, pages 19 & 20, ¶c, states the following:

> c. **Inmate Challenge to Information.** An inmate may challenge the accuracy of the information in his or her Inmate Central File. Unit Team staff shall take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified. The inmate is required to provide staff with sufficient information in support of a challenge (names of persons to contact, government agency, etc. . .).
>
> When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct.
>
> For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided. USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.
>
> If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the challenged document. Staff shall file this information in the applicable section of the Inmate Central file, and also make a notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.
>
> When USPO verifies that the information in the PSI is indeed inaccurate, as claimed by the inmate, staff

–9–

should subsequently review, and where indicated, correct
Bureau generated reports or data such as the Inmate Load
and Security Designation form (BP-337), the Custody
Classification form (BP-338), Progress Report, and any
other reports that may have been based on the PSI.  Bureau
reports, data, or **SENTRY transactions should be corrected
within a reasonable period of time after identification
as being inaccurate.**

If the information source will provide a corrected
document or data, it should be immediately **"inserted in
the file or data base and the inaccurate information or
DOCUMENT REMOVED!  A notation on the Inmate Activity
Record form should acknowledge the insertion of the
corrected information or document.**

Plaintiff asserts that Bureau of Prisons Policy Statement

#5880.11 "**waives** all (e)(5) exemptions for amendment and

corrections of inaccurate and incorrect records contained in any

"**Inmate Central File,**" and also refutes the BOP's claim, that

they had not willfully and intentionally failed to maintain

accurate and correct records on plaintiff, that resulted in

adverse determinations by the BOP respecting plaintiff.  There

is absolutely no excuse which the BOP might offer in not

maintaining accurate records on plaintiff based on BOP Policy

Statement #5880.11, which outlines the proper procedures to

be followed by BOP staff once a inmate challenges the information

that he/she claims to be inaccurate.

In plaintiff's case, BOP staff failed miserably in not

following the noted procedures in BOP Policy Statement #5880.11,

even after plaintiff had challenged the inaccurate and incorrect

information contained in his "Inmate Central File," and

supplying them with the necessary documentation (See plaintiff's

-10-

exhibits attached to his original complaint) that could have been easily verified by contacting U.S. Probation Officer, Maureen E. Akers, at the U.S. Probation Office in the Eastern District of Pennsylvania.  Ms. Akers was the responsible person for investigating and preparing plaintiff's "Presentence Report," and was the responsible person who had verified that plaintiff was a U.S. citizen in 1991.  It is evident that she obviously obtained the information about plaintiff's citizenship from the Department of Homeland Security, "ICE" (formerly "INS"). If the BOP had had any doubts  as to the veracity of plaintiff's PSI, they **"were"** to follow the procedures outlined in BOP Policy Statement #5880.11, pages 19 & 20, ¶c, to make sure that this information contained in plaintiff's "PSI" was accurate and correct, but they didn't, and because of their "non-compliance" with their own policy statement, **"adverse determinations"** were rendered against plaintiff.

## II.  PLAINTIFF IS ENTITLED TO MONEY DAMAGES.

To state a claim for money damages under the Privacy Act, a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally and willfully, and consequently, that an "adverse" determination [w]as made respecting the plaintiff.  5 U.S.C. § 552a(g)(1)(C).  That is, the plaintiff must allege" inaccurate records, agency intent, proximate causation, and an "adverse determination."  Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 582 (D.C. Cir. 2002).

-11-

In Deters v. United States Parole Commission, 85 F.3d
655, 660 (D.C. Cir. 1996), this Circuit held that analysis
of the inaccurate records element of a Privacy Act claim depends
on whether the "truth" underlying the challenged statements
"is clearly provable or relatively easily ascertainable." 85 F.3d
at 658 (internal quotation marks and citations omitted).  In the
typical "Privacy Act" cases, where truth can readily be
ascertained, it is "feasible, necessary, and proper for the
agency and, in turn, the district court to determine whether
each filed item of information is accurate.  See Doe v.
United States, 821 F.2d 694, at 699.  This is because in the
"typical" case the "truth" is "clearly provoable" or "relatively
easily ascertainable."  Sellers v. Bureau of Prisons, 959 F.2d
at 311.  On the other hand, in the **"atypical case,"** where the
challenged information is not capable of being verified, neither
the agency nor the court on de novo review is required to "find
and record the truth."  Instead, it suffices to "adjust the
file equitably to reveal actual uncertainty.  This case is
a **"typical case,"** and the **"truth of this information was easily
provable."**

The defendants, however, have not argued that this case
is an **"atypical case"** and therefore, it must be assumed without
so concluding that the defendants failed to maintain plaintiff's
records with sufficient accuracy and because of that, the court
can now turn to whether plaintiff has been aggrieved by an

-12-

adverse determination by reference to <u>Sellers</u> v. <u>Bureau of</u>
<u>Prisons</u>, 959 F.2d 307.

    As for the issue of agency intent, the "record" in this
case supports a finding that defendants acted willfully or
intentionally in maintaining inaccurate records on plaintiff
based on the following set of facts.

1.  Plaintiff asserts that in 1991, U.S. Probation Officer
Maureen E. Akers had contacted defendant Department of Homeland
Security ("ICE") concerning plaintiff's citizenship status.
She was informed by defendant Department of Homeland Security
("ICE") that plaintiff was in fact was a U.S. citizen after
she had supplied defendant with plaintiff's "Alien Identification
Number, date of birth, social security number, mother's name,
etc.

2.  Plaintiff asserts that the only government agency that
could verify plaintiff's citizenship in 1991 was defendant
Department of Homeland Security ("ICE" formerly "INS"),
therefore, defendant Department of Homeland Security was aware
in 1991 that plaintiff was a U.S. citizen.

3.  Plaintiff asserts that regardless of these known facts
by defendant Department of Homeland Security, they still placed
a detainer against plaintiff, which was "so patently egregious
and the conduct unlawful" because defendant Department of
Homeland Security" unequivocally knew that plaintiff was a
U.S. citizen, but had every intention on deporting (defendant

-13-

Department of Homeland Security ("ICE") has deported known
U.S. citizens in the past, (See plaintiff's Exhibit K) plaintiff,
had plaintiff's family not hired an attorney in (See plaintiff's
Exhibit L) November of 2005, contesting the "INS" detainer,
informing defendant Department of Homeland Security that
plaintiff was a U.S. citizen, which caused plaintiff's family
undue hardship, and financial strain that was completely
unnecessary.

4. Plaintiff asserts that defendant Department of Homeland
Security ("ICE") still did not remove the "INS" detainer until
February 8, 2006 (See plaintiff's Exhibit M).

5. Plaintiff asserts that defendant Bureau of Prisons was
notified by defendant Department of Homeland Security ("ICE")
on February 8, 2006, via fax (See plaintiff's Exhibit M) at
Fort Dix FCI in New Jersey, to lift the "INS" detainer, but
defendant Bureau of Prisons refused to remove the "INS" detainer
until after plaintiff had filed the instant "Privacy Act" Civil
Action, and notified by the Assistant U.S. Attorney representing
defendants, to lift the detainer and correct plaintiff's "Inmate
Central File. The Bureau of Prisons finally lifted the "INS"
detainer on September 20, 2007 (See plaintiff's Exhibit N).

6. Plaintiff asserts that defendant Bureau of Prisons had
no intentions of lifting the "INS" detainer even after they
had been notified by defendant Department of Homeland ("ICE")
Security that the detainer should be removed, which shows
that defendant Bureau of Prisons willfully and intentionally

-14-

maintained inaccurate records on plaintiff that was "so patently egregious and unlawful that anyone undertaking the conduct should have known it to be unlawful."

7.  Plaintiff asserts that the "INS" "Notice of Action" to remove the "INS" detainer  had been in plaintiff's "BOP Inmate Central File" since February 8, 2006, and each "BOP Inmate Systems Manager," as well as each of plaintiff's institutional "Unit Teams," were aware of the existence of the "INS" "Notice of Action" to remove the "INS" detainer, between the years of 2006 & 2007, but they failed to remove it even though BOP Policy Statement #5880.11 instructs them to remove and correct any discredited information in a prisoner's prison file, there-fore, defendant Bureau of Prisons has no excuse for their "blatant, patently egregious and unlawful conduct which they used to make "adverse determinations" against plaintiff. See Doyon v. U.S. Dept. of Justice, 304 F.Supp.2d 32, 34 (D.D.C. 2004); Deters v. United States Parole Commission, 85 F.3d 655, 660 (D.C. Cir. 1996).

## III.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE PRIVACY ACT'S TWO-YEAR STATUTE OF LIMITATIONS.

Defendants have alleged in their "Motion To Dismiss" on page 9, ¶2 the following:

> "Plaintiff's letter addressed to Immigration and Customs En-
> forcement, attached as Exhibit I to his complaint, indicates
> that he "first brought this [i.e. the issues pertaining to
> his citizenship and the detainer] to the attention of INS in
> 2000" while in BOP custody and raised these issues with BOP
> in 2002 while in BOP custody. See Compl., Exh. I, pg. 2.
> Based on Plaintiff's own evidence, the instant cause of

**action against ICE arose by 2000 and against BOP by 2002."**

Plaintiff asserts that he has not submitted as evidence,
a "Exhibit I" which is alleged to be a letter addressed to
Immigration and Customs Enforcement raising the issues pertain-
ing to his citizenship and a detainer in the year 2000 while in
BOP custody or with the BOP in 2002 while in BOP custody.
Plaintiff asserts that these issues were raised with "INS" on
November 10, 2005 after plaintiff's family had hired attorney
Sharon Brown, Esq. of "Access USA Lawyer (See Plaintiff's
Exhibit L) to lift their detainer, and therefore, plaintiff's
"Privacy Act" complaint is not barred by the two-year statute
of limitations as alleged by defendants, since plaintiff's
"Privacy Act" complaint was filed on May 23, 2007.

In sum, plaintiff asserts that the defendants herein have
willfully and intentionally failed to maintain his file with
sufficient accuracy to assure fairness in determinations
respecting plaintiff, and they did so in an intentional and
willful manner without grounds for believing it to be lawful,
flagrantly disregarding plaintiff's rights under the "Act"; which
was "so patently egregious and unlawful that anyone undertaking
the conduct should have known it unlawful.

In light of the aforementioned, plaintiff asserts that he
is entitled to monetary damages under the "Privacy Act" because
the defendants herein have failed to maintain accurate records,

-16-

and they did so willfully and intentionally.

Plaintiff therefore seeks damages in the amount of $50,000 from the herein named defendants for lost prison wages plaintiff could have earned had defendant BOP precluded him from working in the prison industry; for all attorney fees paid to attorney Sharon Brown, Esq. in representing plaintiff in November of 2005; and the undue "financial and mental strain" placed upon plaintiff's family, past and future sufferings.

Subscribed to and Sworn
Before me on this  19
day of  November  2007.

_____
Notary Public

My Commission Expires 4-20-2011

Respectfully Submitted,

_____
Stanley Baptiste
Reg. No. 44102-066
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Motion In Opposition/Plaintiff's Motion For Summary Judgment and Affidavit in Support has been mailed to Robin M. Meriweather, Assistant U.S. Attorney, 555 4th Street, N.W., Washington, D.C. 20530 this  19  day of  November  2007.

_____
Stanley Baptiste

-17-

Exhibit I
Civil Action No. 1:07-cv-00959

## IN UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
)
vs.                              )          Docket No.   91-00132-01
)
Stanley Baptiste                 )
)
)
)

---

## PRESENTENCE REPORT

Prepared for:          The Honorable James T. Giles
                       United States District Judge

Prepared by:           Maureen E. Akers
                       United States Probation Officer
                       (215) 597-2992

Sentencing Date:       July 30, 1991

Office Location:       Philadelphia, Pa.

Offense:               Count One - conspiracy to distribute
                       cocaine base, a Schedule II, narcotic
                       controlled substance, Title 21, USC,
                       Section 846, a Class A felony.

                       Counts Two through Nine - distribution of
                       cocaine base, Title 21, USC, Section
                       841(a)(1),  Class B and C felonies.

Date of Arrest:        March 5, 1991

Release Status:        Detained at FCI, Fairton

Identifying Data:

Date of Birth:         10/13/66
Age:                   24
Social Security Number: 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
Sex:                   Male
Citizenship:           U.S.
Race:                  Black
Dependents:            None
FBI No.:               Unknown
Other ID No.:          INS - A35467846
Education:             12 years
U.S. Marshal No.:      44102 - 066

*Westlaw.*

Slip Copy

Slip Copy, 2006 WL 2355868 (N.D.N.Y.)

**(Cite as: Slip Copy)**

**C**

Perez v. U.S.

N.D.N.Y.,2006.

Only the Westlaw citation is currently available.

United States District Court,N.D. New York.

Duarnis **PEREZ**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

**No. 1:05-CV-1294(LEK).**

Aug. 15, 2006.

J. Jeffrey Weisenfeld, Office of J. Jeffrey Weisenfeld, New York, NY, for Petitioner.

Sara M. Lord, Office of United States Attorney, Albany, NY, for Respondent.

*MEMORANDUM-DECISION AND ORDER* FN1

> FN1. For printed publication by the Federal Reporters.LAWRENCE E. KAHN, District Judge.

**\*1** Presently before the Court is a petition and supporting documentation for a writ of habeas corpus filed by Duarnis Perez ("Perez" or "Petitioner"), pursuant to 28 U.S.C. § 2255 (" § 2255 petition"). *See* Dkt. Nos. 1, 3. For the following reasons, the petition is granted.

**I. BACKGROUND**

On July 5, 1996, Perez was deported to the Dominican Republic after he was convicted of, and on the basis of, an aggravated felony, specifically, the manufacture and delivery of heroin. Plea Tr. (Case No. 00-CR-266, Dkt. No. 19) at 15. At the time of his conviction, Perez and the Government believed that Perez was a citizen of the Dominican Republic and, therefore, an alien. *Id.* In 2000, Perez was arrested in Rouse's Point, New York, and pleaded guilty to one count of illegal reentry after deportation pursuant to 8 U.S.C. § 1326.FN2 On September 27, 2000, this Court sentenced Perez to incarceration for a term of fifty-seven (57) months followed by supervised release for a term of three (3) years. Petr.'s Mem. No. 1 FN3 (Dkt. No. 1, Ex. B). Perez appealed his sentence arguing that his prior conviction, which significantly

increased the maximum guideline sentence, is an element of the crime that should have been charged in the information. The Second Circuit, however, rejected Perez's argument and affirmed this Court's decision on March 28, 2001. *See* Summ. Order (Case No. 00-CR-266, Dkt. No. 23).

> FN2. Perez states that he has waived all collateral remedies in his plea agreement. Petr.'s Mem. No. 1 (Dkt. No. 1) at 3. He is incorrect. In his plea agreement, Perez only waived his rights, pursuant to 18 U.S.C. § 3742, to appeal any sentence of imprisonment of ninety-six (96) months or less. Plea Agr. (Case No. 00-CR-266, Dkt. No. 10) at 11.

> FN3. Perez initially filed a motion for a writ of error coram nobis. Thereafter, Perez, pursuant to instructions from the Court, recharacterized his motion as a habeas petition, in accordance with 28 U.S.C. § 2255. *See, infra*, p. 3. Therefore, the Court refers to the memorandum of law in support of the writ of coram nobis as "Petr.'s Mem. No. 1" and the memorandum of law in support of the writ of habeas corpus as "Petr.'s Mem. No. 2."

On April 10, 2004, after serving the entire incarcerative portion of his sentence-that is, after spending fifty-seven months in prison-erez met with a representative of Immigration and Customs Enforcement ("ICE") to commence his deportation proceedings.FN4 At this meeting, the ICE representative informed Perez that he was, in fact, a United States citizen and, therefore, could not be deported. Petr.'s Aff. (Dkt. No. 3) at ¶¶ 6, 17. In effect, Perez was notified that he had been wrongfully deported in 1996 and, thereafter, wrongfully incarcerated for illegal reentry. Soon after, USCIS issued Perez a Certificate of Citizenship dated July 2, 2004. Petr.'s Mem. No. 1 (Dkt. No. 1, Ex. A).

> FN4. In his motions, memoranda and affidavit, Petitioner states that a representative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2355868 (N.D.N.Y.)
(Cite as: Slip Copy)

Page 2

from the Immigration and Naturalization Services ("INS") informed him, on April 10, 2004, that he was a United States citizen. However, on March 1, 2003, the INS transitioned into the Department of Homeland Security and was divided into three separate agencies: the United States Citizenship and Immigration Services ("USCIS"), the United States Immigration and Customs Enforcement, and the United States Customs and Border Protection. Now, the USCIS is responsible for only the administration of immigration services, including record keeping services, and the ICE is responsible for investigating and enforcing immigration laws. Representatives from ICE conduct deportation proceedings for convicted aliens after their incarceration is complete. Therefore, an ICE agent, and not an INS agent, informed Perez that he was a United States citizen on April 10, 2004.

Unbeknownst to him, Perez automatically had become a naturalized United States citizen on April 13, 1988, derivatively through his mother's successful naturalization.[FN5] Petr.'s Mem. No. 1 (Dkt. No. 1); Petr.'s Aff. (Dkt. No. 3) at ¶¶ 7, 12. Prior to his meeting with the ICE representative, Perez was not notified, in any manner, that he was a naturalized citizen; he had received no documentation concerning his citizenship status. Moreover, none of the attorneys representing him in his initial deportation proceeding or his illegal reentry proceedings suggested to him that he may be a United States citizen. Petr.'s Aff. (Dkt. No. 3) at ¶¶ 7-10. Even his mother did not know that he was a United States citizen. Petr.'s Mem. No. 2 (Dkt. No. 3) at 3 n. 1.

FN5. In 1988, when Perez's mother received citizenship, 8 U.S.C. § 1432 provided that a child born outside the United States automatically became a citizen when the following three conditions were present: (1) the parent with sole custody of the child became a United States citizen; (2) the child was under sixteen years of age; (3) the child was lawfully residing in the United States. At the time his mother received citizenship, Perez

was fifteen years old and was legally residing in the United States, and his mother had sole custody of him. He, therefore, automatically became a United States citizen on April 13, 1988.

In the middle of 2003, Perez retained Emily Viziri, Esq., as counsel to represent him in his post-incarceration deportation proceedings. In discussing his case with Viziri, the possibility that Perez was a United States citizen was raised; but, after the possibility was raised, Viziri neither provided further advice on, nor secured any proof of, Perez's citizenship status. Petr.'s Aff. (Dkt. No. 3) at ¶¶ 14-16.

*2 On January 13, 2005, Perez filed a petition for a writ of error coram nobis to vacate his conviction in light of the newly discovered fact that he is a United States citizen. Petr.'s Mot. (Dkt. No. 1). On May 25, 2005, this Court ordered that Perez recharacterize his application as one for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, because he is still in the custody of the United States by virtue of his pending supervised release.[FN6] On October 17, 2005, Perez filed a proper § 2255 petition requesting that the Court vacate his conviction and, in turn, the remainder of his sentence-specifically, his term of supervised release. Petr.'s Mem. No. 2 (Dkt. No. 3). The Government has opposed this petition. Govt.'s Mem. (Dkt. No. 5).

FN6. A writ of error coram nobis can only be granted to federal prisoners that have completed their entire sentence and are no longer in the custody of the United States. *Fleming v. United States,* 146 F.3d 88, 89-90 (2d Cir.1998). Petitioners under federal supervised release are considered to be in the custody of the United States and are, therefore, precluded from receiving relief through a writ of error coram nobis. *United States v. Pregent,* 190 F.3d 279, 283 (4th Cir.1999) (citing *Maleng v. Cook,* 490 U.S. 488 (1989)). A writ of habeas corpus, however, is available to prisoners that are still in the custody of the United States. 28 U.S.C. § 2241(c)(1). Therefore, in the instant case, Perez, who is still under super-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

vised release, can only move the Court to vacate his conviction by moving for a writ of habeas corpus, not by a writ of error coram nobis.

## II. DISCUSSION

A. *Petitioner is not Time Barred from Seeking Relief*

Before the Court can address the claims brought in the instant § 2255 petition, the Court must first determine whether Petitioner is time barred from raising these claims. Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), there is a one-year statute of limitations for filing a § 2255 petition. This statute of limitations begins to run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

In the instant case, Petitioner argues that the statute of limitations began to run from the date on which he discovered that he was, in fact, a United States citizen-that is, the date on which the fact supporting his current § 2255 claim was discovered. Petr.'s Mem. No. 2 (Dkt. No. 3) at 2. Petitioner contends that, in exercising due diligence, the earliest date on which he was able to discover that he was a United States citizen was on April 10, 2004, when the ICE representative informed him of his citizenship status. *Id.* Therefore, according to Petitioner, his petition, which was initially filed on January 13, 2005, is timely since it was filed within one-year of April 10, 2004.

The Government, however, argues that Petitioner is

barred from seeking relief because he could have discovered, through the exercise of due diligence, that he was a United States citizen-specifically contending that Petitioner had the ability and, therefore, the responsibility to discover his citizenship status-prior to the judgment of his conviction becoming final, or his meeting with the ICE agent on April 10, 2004.FN7 Govt.'s Mem. (Dkt. No. 5) at 3, 5. Nonetheless, as the Second Circuit has held, "the statute does not require the maximum feasible diligence," but, rather, only reasonable diligence. *Wims v. United States,* 225 F.3d 186, 190 (2d Cir.2000). That is, even if it was possible for a petitioner to discover facts or evidence relevant to his defense, the petitioner need not actually discover those facts or evidence to exercise due diligence so long as the petitioner reasonably pursued discovering all relevant evidence concerning his defense.

> FN7. The Government incorrectly treated 28 U.S.C. § 2255(4) as providing the basis for tolling the statute of limitations, that is, for extending the limitations period. Properly interpreted, § 2255(4) actually defines the time at which the statute of limitations begins to run; it resets the start of the limitations period to the date on which a new material fact is discovered. *Wims v. United States,* 225 F.3d 186, 190 (2d Cir.2000). Nonetheless, the Government's claim that Petitioner had ample opportunity to discover his citizenship status before his conviction became final is, still, relevant in determining when the statute of limitations actually begins to run.

**\*3** The Court believes that, though it may have been possible for Petitioner to have discovered his citizenship status prior to the date on which his conviction became final, it was not entirely unreasonable for him not to have done so. Petitioner did not receive any notification that he had automatically become a citizen in 1988; it was not until his meeting with the ICE agent that he was given any indication that he was a United States citizen. Prior to the meeting, he did not take any oath or receive any documentation from the Government. Moreover, none of Petitioner's attorneys, in any of his criminal proceedings, advised

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2355868 (N.D.N.Y.)
(Cite as: Slip Copy)

him that he was possibly a citizen. Even Petitioner's mother told him and his lawyers that Petitioner was not a United States citizen-a statement that Petitioner claims his mother now regrets. Petr.'s Mem. No. 2 (Dkt. No. 3) at 3 n. 1.

The Court, more importantly, finds that it was not unreasonable for Petitioner, once he had already been deported, to assume that he was not a United States citizen. The Second Circuit has presumed that "deportation itself is sufficient to impress upon the mind of the deportee that return is forbidden." *United States v. Torres-Eschavarria,* 129 F.3d 692, 698 (2d Cir.1997) (holding that a deportee found in the United States unless he receives the Attorney General's permission is presumed to have an intent to reenter unlawfully). That is, when a person is deported he is, in effect, given notice that he is barred from reentering the country without explicit permission from the Attorney General. Moreover, a United States citizen cannot be barred from reentering the country. *United States v. Wong Kim Ark,* 169 U.S. 649, 653 (1898) (holding that the petitioner, of Chinese descent, could not be barred from entering the country because he was born in the United States and is, therefore, a United States citizen). It follows, then, that a person who is lawfully barred from reentering the United States cannot be a United States citizen. Deportation is, in effect, notice, by the Government, to the deportee that he is not a United States citizen. A deportee is, therefore, constructively notified by the INS or, now, by the Department of Homeland Security that he is not a citizen.

The Court finds that it is not unreasonable to rely on the INS's constructive notice via deportation. In the instant case, Petitioner was deported in 1996 pursuant to 8 U.S.C. § 1227(a)(2), which only subjects aliens to deportation. The Court finds that the statute of limitations did not begin until Petitioner was informed of his citizenship status by the ICE agent on April 10, 2004. As a result, the instant petition, which was filed on January 13, 2005, is timely.

### B. *Petitioner May Collaterally Attack His Guilty Plea*

A guilty plea is considered an admission of all the elements of a crime. By pleading guilty, a defendant

concedes to the veracity of the facts that constitute the crime so that, ordinarily, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508 (1984). One exception, *inter alia,* is when a petitioner is able to establish actual innocence in light of newly discovered evidence. *Fountain v. United States,* 357 F.3d 250, 255 (2d Cir.2004). To show actual innocence, a petitioner must prove that he is factually innocent, not by merely showing legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). That is, the petitioner must prove, in light of new, reliable evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 327 (1995). Because the actual innocence determination is based on an assessment of fact, the Government may rebut an actual innocence claim using "any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy." *Fountain,* 357 F.3d at 255 (quoting *Bousley,* 523 U.S. at 623-24). In sum, a petitioner may challenge his guilty plea if, in light of all new evidence provided by both the petitioner and the Government, the petitioner can show that a reasonable juror would have a reasonable doubt as to his guilt.

**\*4** In the instant case, Petitioner's conviction for illegal reentry after deportation rests on the facts to which he admitted in his guilty plea. The elements to prove an illegal reentry pertinent to Petitioner are that: (1) the accused is an alien; (2) the accused has been previously deported; (3) the accused was found in the United States; and (4) the accused required consent of the Attorney General to reenter the United States and did not obtain the consent of the Attorney General prior to his reentry. 8 U.S.C. § 1326(1)-(2). In open court, Petitioner admitted that: (1) he was a citizen of the Dominican Republic; (2) he was previously deported pursuant to an aggravated felony conviction; (3) he was found at Rouse's Point, New York, where he attempted to reenter the United States from Canada; and (4) he did not have permission from the Attorney General to reenter the United States after he was deported. Plea Tr. (Case No.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00959-CKK    Document 17-2    Filed 11/28/2007    Page 6 of 15
Slip Copy
Slip Copy, 2006 WL 2355868 (N.D.N.Y.)
(Cite as: Slip Copy)

Page 5

00-CR-266, Dkt. No. 19) at 14-17. Therefore, in order to challenge the factual basis on which he was convicted, Petitioner must establish actual innocence-he must show that, in light of new evidence, no reasonable juror could still find him guilty beyond a reasonable doubt.

In support of his actual innocence claim, Petitioner advances his Certificate of Citizenship as newly discovered evidence to prove that he is, in fact, a United States citizen. Petr.'s Mem. No. 1 (Dkt. No. 1, Ex. A). Because both Petitioner and the prosecutor were unaware of this evidence when Petitioner pleaded guilty, the Court finds that Petitioner's Certificate of Citizenship properly serves as new evidence to support his actual innocence claim.

The Government does not dispute Petitioner's citizenship status or posit any new evidence to further support a finding of guilt under 8 U.S.C. § 1326. In light of his Certificate of Citizenship, the Court finds that Petitioner was indeed a citizen at the time of his conviction for illegal reentry. Thus, the first requisite element of a conviction under 8 U.S.C. § 1326-that the accused be an alien-is not satisfied. As a result, the Court finds that no reasonable juror could find him guilty of illegal reentry after deportation. Because he has established actual innocence, Petitioner may advance a § 2255 petition to challenge his guilty plea.

### C. *Petitioner's Procedural Default is Excused*

A prisoner must make all of his defense claims in his trial or on direct appeal of his conviction so that the government has ample opportunity to address them. Any claims not raised on direct appeal are, in general, procedurally defaulted and, therefore, barred from being advanced as the grounds for a § 2255 petition. *Bousley,* 523 U.S. at 622; *Murray v. Carrier,* 477 U.S. 478, 485 (1986). This rule also applies to situations in which the petitioner cannot make an appeal because he has, in a plea agreement, waived his right to appeal. *United States v. Pipitone,* 67 F.3d 34, 39 (2d Cir.1995) (citing *United States v. Jones,* No. 94-6209, 1995 WL 321263, at *1 (4th Cir. May 30, 1995)).

*5 The Supreme Court has, however, recognized a miscarriage-of-justice exception to the general bar. *Carrier,* 477 U.S. at 495. The Court explains that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at 496. *See also Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 171 (2d Cir.2000) (holding that demonstrating actual innocence excuses procedural default in noncapital cases); *supra,* pp. 7-8 (standard for actual innocence).

In the present case, since Petitioner appealed his sentence, but not his actual conviction, he has procedurally defaulted on the claims he advances in the instant § 2255 petition. Specifically, he failed to raise in his direct appeal the fact that he is a United States citizen and the contention that the Government failed to inform him of his citizenship status when it prosecuted him for illegal reentry. Therefore, under the general rule, Petitioner's § 2255 petition has been procedurally defaulted. Nonetheless, the Court may review the petition on its merits because Petitioner has established his actual innocence, as the Court previously noted, based on newly discovered evidence. *See, supra,* p. 8-9.

### D. *Petitioner's Sentence was Imposed in Violation of the Constitution*

A federal prisoner may move the court that sentenced him to vacate his conviction and sentence when imposed in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2255; *United States v. Bagley,* 473 U.S. 667 (1985). The grounds for seeking relief pursuant to 28 U.S.C. § 2255 are narrowly construed so that "the writ of habeas corpus will not be allowed to do service for an appeal." *Sunal v. Large,* 332 U.S. 174, 178 (1947). That is, a habeas petition does not reexamine evidence to determine whether a prisoner is guilty or innocent. Instead, on habeas review, the court ensures that the petitioner's conviction and imprisonment was not the result of a constitutional violation. Therefore, freestanding claims of actual innocence, in light of new evidence, cannot serve as grounds for habeas relief. *Herrera v. Collins,* 506 U.S. 390, 400 (1993). To receive habeas relief, a petitioner must show that his conviction is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the result of a constitutional violation. Petitioner argues that, because the Government was aware or, at least, should have been aware that he was a United States citizen, the Government violated his constitutional right to due process by failing to disclose his citizenship status to him. Petr.'s Mot. (Dkt. No. 1) at 2.

The criminal justice system of the United States fundamentally serves to ensure that "the guilty be convicted and the innocent go free." *Herring v. New York,* 422 U.S. 853, 862 (1975). The Government's interest in a criminal prosecution, therefore, "is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935). In accordance with their duty to exact justice, *United States v. Tomaiolo,* 286 F.2d 568, 569 (2d Cir.1961) (quoting *Berger,* 295 U.S. at 88), United States Attorneys, at times, have declined to oppose petitions to correct clear errors. *See Serwa v. United States,* No. 96-MJ-199 (Govt.'s Motion, Dkt. No. 4) (the Government actually moved the Court to dismiss the complaint and vacate the prisoner's conviction in the interest of justice); *United States v. Cox,* No. 94-3500-EEO, 1995 WL 351406, at *2 (D.Kan. May 5, 1995). Yet, in the instant case, the Government opposes the § 2255 petition while simultaneously conceding that Petitioner is a United States citizen and, therefore, could not be properly prosecuted pursuant to 8 U.S.C. § 1326. *See, infra,* pp. 14-15. In effect, the Government is arguing that an innocent man who was wrongly convicted should not be released from the custody of the United States. Moreover, the Government, in opposing a petition that would correct the wrongful conviction of an innocent man, has wasted limited judicial and prosecutorial resources. Because the prosecutor is the representative of the Government in a criminal prosecution, his role is more than a mere adversary; he is charged with ensuring that an accused receive due process-that is, a fair trial.

*6 The Supreme Court has, therefore, established that it is a violation of the accused's constitutional right to due process for the Government, in good faith or bad in bad faith, to withhold any material, exculpatory evidence whether or not the defendant explicitly requests this evidence. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963) (holding that the prosecution's sup-

pression of requested evidence favorable to the defendant violates due process, notwithstanding the prosecution's good faith); *United States v. Agurs,* 427 U.S. 97, 106 (1976) (holding that prosecution's failure to disclose material, exculpatory evidence, even if it is not requested by the defendant, constitutes a due process violation); *Bagley,* 473 U.S. at 684 (holding that prosecution's failure to disclose evidence, which, if admitted, would have had a reasonable probability of resulting in a different verdict, is grounds for granting a § 2255 petition).

The prosecutor, moreover, is obligated to disclose any material, exculpatory information that is in its constructive possession-that is, any information that is in the possession of an "arm of the prosecution." *United States v. Morell,* 524 F.2d 550, 555 (2d Cir.1975). An "arm of the prosecution" is any government agent or agency that investigates and provides information specifically aimed at prosecuting a particular accused.[FN8] Thus, the Court may impute, to the prosecutor, the knowledge of any exculpatory evidence that is known to any government agent or agency involved in the prosecution of a criminal case.

> FN8. The prosecutor is not responsible to disclose exculpatory information that the prosecutor does not know exists, which is only in the possession of a government agent or agency that is not directly involved in the prosecution of the criminal case. Such a requirement would "condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998) (quoting *United States v. Gambino,* 835 F.Supp. 74, 95 (E.D.N.Y.1993)). *See also Pina v. Henderson,* 752 F.2d 47 (2d Cir.1985) (holding that information possessed by a parole officer could not be imputed to the prosecutor because the Parole Office did not serve, in this case, as a investigatorial agency and the parole officer was not a prosecutorial investigator in the prosecution of the accused). Instead, only agencies that actively contributed to the criminal investigation of a particular accused are considered to be an arm of the

prosecution of that defendant.

In *Kyles v. Whitley,* 514 U.S. 419, 438 (1995), the prosecution of the defendant, who was accused of first degree murder, primarily rested on the testimony of a police informant. The police officers who investigated the case were aware of certain facts that affected the credibility of the informant. The investigators, however, did not reveal that impeachment information to the prosecutor until the defendant was convicted. The prosecution, as a result, failed to disclose this potentially exculpatory information to the defense. The Court held that the prosecutor, though unaware of the evidence during the trial, was still responsible for disclosing information concerning the credibility of certain witnesses. The Court reasoned that the prosecutor had the ability to create procedures and regulations to ensure that government agents provided the prosecutor with all information that is possibly exculpatory. *Kyles,* 514 U.S. at 438 (quoting *Giglio v. United States,* 405 U.S. 150, 154 (1972)).

As the Government's representative, the prosecutor has the responsibility to be aware of all information in the possession of the Government and ensure that this information, if favorable to the defendant, is disclosed to the defense. Otherwise, government agents and agencies would be encouraged to withhold exculpatory evidence from the prosecutor in order to avoid disclosing such information to the defense. Such a system would be manifestly unjust since exculpatory information possessed solely by a government agent or agency would never come to light. Innocent defendants could face conviction since such defendants would not have access to the information that would exonerate them.

**\*7** Not all acts of withholding exculpatory evidence, however, are grounds for granting a § 2255 petition. First, a prosecutor is not obligated to disclose, to the defendant, information that "the defendant or his attorney either knew, or should have known." *United States v. Gonzalez,* 110 F.3d 936, 944 (2d Cir.1997). Instead, the prosecutor must disclose exculpatory information, to the defense, that is in the prosecutor's actual or constructive possession only if it is reasonable for the defendant not to know that exculpatory information.

Second, only when undisclosed, exculpatory evidence is *material* is an accused's right to due process violated. *Brady,* 373 U.S. at 87. Generally, in a situation where a prosecutor fails to disclose exculpatory information, which was not known to the prosecutor, but was in the constructive possession of the prosecutor, the withheld information is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Orena v. United States,* 956 F.Supp. 1071, 1092 (E .D.N.Y.1997) (quoting *Bagley,* 473 U.S. at 682). In the context of a guilty plea under this same circumstance, the test for materiality is "whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *Tate v. Wood,* 963 F.2d 20, 24 (2d Cir.1992). That is, withheld evidence is deemed to be material only if, had the evidence been properly disclosed, competent counsel would have, with reasonable probability, advised the accused to plead not guilty. *Miller v. Angliker,* 848 F.2d 1312, 1322 (2d Cir.1988). No competent defense attorney would advise his client to plead guilty to a charge on which the Government would be unable to convict the accused. Therefore, if the prosecution's failure to disclose evidence could have, with reasonable probability, resulted in an inability to convict the accused, that is grounds for vacating a conviction pursuant to 28 U.S.C. § 2255.

In the instant case, Petitioner's constitutional right to due process was violated when the Government failed to disclose to him, upon prosecuting him for illegal reentry, that he was, in fact, a United States citizen. The Government concedes that Petitioner "does appear to have acquired U.S. citizenship" prior to his conviction for illegal reentry. Govt.'s Mem. (Dkt. No. 5) at 1. Further, as the Court previously noted, it was not unreasonable for Petitioner not to have known that he was United States citizen. *See, supra,* pp. 6-7. As a United States citizen, Petitioner is not the proper subject to be convicted pursuant to 8 U.S.C. § 1326 rendering the Government unable to prosecute Petitioner for illegal reentry. Thus, the evidence supporting the fact that Petitioner is a United States citizen,

Slip Copy
Slip Copy, 2006 WL 2355868 (N.D.N.Y.)
(Cite as: Slip Copy)

Page 8

if improperly withheld, is material.

**\*8** The Government had constructive knowledge of the fact that Petitioner was a United States citizen when he was prosecuted pursuant to 8 U.S.C. § 1326. In 2000, when the Government prosecuted Petitioner for illegal reentry, the INS was the government agency that handled legal and illegal immigration and naturalization. The INS's responsibilities included, *inter alia,* maintaining records of naturalization and investigating cases of illegal immigration to prosecute illegal immigrants.[FN9] Petitioner argues that the INS had a record of his citizenship status when the Government prosecuted him for illegal reentry. Petr .'s Mem. No. 1 (Dkt. No. 1) at 3. The Government provides no evidence to the contrary. Moreover, the ICE agent, in 2004, indicated to Petitioner that the USCIS had a record of his naturalization. Because he was naturalized along with his mother in 1988, the record must have been created at that time. Therefore, the Court finds that the INS had, in its possession, a record of Petitioner's citizenship status when the Government prosecuted Petitioner for illegal reentry.

> FN9. Again, since the INS transitioned into the Department of Homeland Security, the various functions of the INS have been divided into three separate government agencies under the supervision of the Department of Homeland Security. Under the new bureaucratic structure, the USCIS may, or may not, be considered an arm of the prosecution since the prosecutorial functions are in the province of the ICE while the records are kept by the USCIS. In the present case, the Court is only concerned with whether, under the old structure, the INS is considered part of the prosecution team.

The INS's knowledge of Petitioner's citizenship status may be imputed to the prosecutor because the INS acted as a part of the prosecution team. The INS provided the Government with the information that Petitioner had been previously deported in 1996 and was, therefore, illegally in the United States in 2000. Plea Tr. (Case No. 00-CR-266, Dkt. No. 19) at 15-16. The INS also assisted the Government in prosecuting

Petitioner by investigating Petitioner's immigration status and providing the information to the prosecutor for the sole purpose of prosecuting Petitioner for illegal reentry-thereby acting as an arm of the prosecution in the case against Petitioner.

In sum, the Government was obligated to disclose to Petitioner that he was a United States citizen because (1) that information was in the constructive possession of the prosecutor and (2) that information was material. Because the Government did not disclose the material, exculpatory information to him, Petitioner suffered a constitutional due process violation. Thus, the Court finds that Petitioner has been imprisoned as a result of a constitutional violation.

Alternatively, Petitioner makes the claim that his conviction and sentence should be vacated because, as a United States citizen, Petitioner cannot be convicted of illegal reentry. Petr.'s Mem. No. 2 (Dkt. No. 3) at 1. United States citizenship entails the privilege to reenter and remain in the country and the immunity from conviction for engaging in such activities. *See Acosta v. Gaffney,* 413 F.Supp. 827, 832 (D.N.J.1976) ("No act of any branch of government may deny to any citizen the full scope of privileges and immunities inherent in United States citizenship. Central to all of those rights, of course, is the right to remain."); *Lopez v. Franklin,* 427 F.Supp. 345, 349 (E.D.Mich.1977) ("He faces no quotas or entry restrictions because he is not an alien but a native-born citizen of the United States."). To deny a United States citizen the privilege to reenter and remain in the United States, and the immunity from being convicted for doing so, would be "repugnant to the Constitution." *Acosta,* 413 F.Supp. at 349. It is a constitutional violation to imprison a United States citizen for reentering the United States.

**\*9** In the present case, because Petitioner has established that he is a United States citizen, it is a constitutional violation to convict him for reentering the United States. As a result, the Court finds that Petitioner's conviction and, in turn, his sentence should be vacated pursuant to 28 U.S.C. § 2255.

### III. CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2355868 (N.D.N.Y.)
(Cite as: Slip Copy)

Page 9

Accordingly, it is hereby

**ORDERED** that Petitioner's Motion and supporting documentation, pursuant to 28 U.S.C. § 2255, to vacate and set aside his conviction and sentence (Dkt. Nos.1, 3) is **GRANTED;** and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

**IT IS SO ORDERED.**

N.D.N.Y.,2006.
Perez v. U.S.
Slip Copy, 2006 WL 2355868 (N.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit L
Civil Action No. 1:07-cv-00959



## ACCESS A LAWYER™

IMMIGRATION • VISAS • GREEN CARDS • CITIZENSHIP
845 North East 79th Street • Miami, FL 33138
Phone 305-759-8262 • Fax 305-754-0147 • Nationwide 800-710-7640

November 10, 2005

Officer Nicole Randolph
Department of Homeland Security

RE: BAPTISTE, STANLEY
    A 35 467 846

## REQUEST TO HAVE DETAINER LIFTED AS STANLEY BAPTISTE IS A U.S. CITIZEN

Dear Officer Randolph,

Our office has been retained by Mr. Baptiste to represent him before the Department of Homeland Security to have this detainer lifted.

Mr. Baptiste's mother Marie Baptiste became a United States Citizen on February 7, 1980 (Please see Exhibit A).

Mr. Baptiste's mother and father were divorced on 12/28/1981 and the mother was awarded custody of the children. (Please see Exhibit B).

Mr. Stanley Baptiste was 15 years old at the time of the divorce. ( Please see Exhibit C)

Section 321(a) of the Immigration and Nationality Act (I& N Act) speaks of the conditions under which a child may acquire U.S. citizenship, including through the naturalization of one or both parents, provided that such naturalization takes place while such child is under the age of eighteen years, and such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization.

Mr. Stanley Baptiste is a U.S. citizen pursuant to INA Section 321(a) and the detainer should be lifted.

Sincerely,

Sharon Brown Esq.

```
***********************
***    TX REPORT    ***
***********************
```

TRANSMISSION OK

Exhibit M – Page 1
Civil Action No. 1:07-cv-00959

| | |
|---|---|
| TX/RX NO | 3034 |
| CONNECTION TEL | 16097247553 |
| CONNECTION ID | FCI FORT DIX ISM |
| ST. TIME | 02/08 15:44 |
| USAGE T | 00'22 |
| PGS. SENT | 1 |
| RESULT | OK |

U.S. Department of Justice
Immigration and Naturalization Service

# Immigration Detainer – Notice of Action

8/6/2008

File No. 35 467 846

Date:

TO: (Name and title of institution)

U.S. BOP
FORT DIX FCI

FROM: (INS office address)
United States Department of Homeland Security
Bureau of Immigration and Customs Enforcement
Office of Investigations
RAC Cherry Hill

Name of alien: STANLEY BAPTISTE    BOP # 44102-066

Date of birth: _____    Nationality: UNITED STATUS    Sex: M

**You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:**

☐ Investigation has been initiated to determine whether this person is subject to removal from the United States.

☐ A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on _____ (Date)

☐ A warrant of arrest in removal proceedings, a copy of which is attached, was served on _____ (Date)

☐ Deportation or removal from the United States has been ordered.

**It is requested that you:**

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

☐ Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling _____ during business hours or _____ after hours in an emergency.

☐ Please complete and sign the bottom block of the duplicate of this form and return it to this office. ☐ A self-addressed stamped envelope is enclosed for your convenience. ☐ Please return a signed copy via facsimile to _____ (Area code and facsimile number)

Return fax to the attention of _____ (Name of INS officer handling case) , at _____ (Area code and phone number)

☐ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

U.S. Department of Justice
Immigration and Naturalization Service

**Immigra    Detainer - Notice of Action**

Exhibit M – Page 2
Civil Action No. 1:07-cv-00959

File No. 35 467 846

Date:

TO: (Name and title of institution)

U.S. BOP

FORT DIX FCI

FROM: (INS office address)
United States Department of Homeland Security
Bureau of Immigration and Customs Enforcement
Office of Investigations
RAC Cherry Hill

Name of alien: STANLEY BAPTISTE    BOP # 44102-066

Date of birth: ▮▮▮▮▮    Nationality: UNITED STATES    Sex: M

**You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:**

☐ Investigation has been initiated to determine whether this person is subject to removal from the United States.

☐ A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on
_____
(Date)

☐ A warrant of arrest in removal proceedings, a copy of which is attached, was served on _____
(Date)

☐ Deportation or removal from the United States has been ordered.

**It is requested that you:**

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling _____ during business hours or _____ after hours in an emergency.

☐ Please complete and sign the bottom block of the duplicate of this form and return it to this office.  ☐ A self-addressed stamped envelope is enclosed for your convenience.  ☐ Please return a signed copy via facsimile to _____
(Area code and facsimile number)

Return fax to the attention of _____ , at _____
(Name of INS officer handling case)    (Area code and phone number)

☐ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

☐ Notify this office in the event of the inmate's death or transfer to another institution.

☒ Please cancel the detainer previously placed by this Service on _____

_____    Enforcement Agent
(Signature of INS official)    (Title of INS official)

Receipt acknowledged:

Date of latest conviction: _____    Latest conviction charge: _____
Estimated release date: _____

Signature and title of official: _____

Form I-247 (Rev. 4-1-97) N

BP-S394.058 DETAINER ACTION LETTER CDFRM Civil Action No. 1:07-cv-00959
MAR 03
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| To<br>U.S Immigration and Customs Enforcement<br>ATTN; Detainers/Investigations<br>140 Centrewest Ct., Ste. 100<br>Cary, NC 27513 | Institution:<br>Rivers Correctional Institution<br>145 Parker's Fishery Road<br>Winton, North Carolina 27986 | |
|---|---|---|
| | Date **September 20, 2007** | |
| Case/Dkt<br>A# 35 46 7846    Inmate Name<br>BAPTISTE, STANLEY | Fed Reg No.<br>44102-066 | DOB/SEX<br>10-13-1966   M/BLK |
| Aliases: | Other No. **FBI# 753669MA9** | |

The below checked paragraph relates to the above named inmate:

☐ This office is in receipt of the following report: **.** Will you please investigate this report and advise what disposition, if any, has been made of the case. If subject is wanted by your department and you wish a detainer placed, it will be necessary for you to forward a certified copy of your warrant to us along with a cover letter stating your desire to have it lodged as a detainer. If you have no further interest in the subject, please forward a letter indicating so.

☐ A detainer has been filed against this subject in your favor charging: _Release is tentatively scheduled for; however, we will notify you no later than 60 days prior to actual release. To check on an inmate's location, you may call our National Locator Center at: 202-307-3126 or check our BOP Inmate locator Website at www.bop.gov.

☐ Enclosed is your detainer warrant. Your detainer against the above named has been removed in compliance with your request.

☒ Your detainer has been removed on the basis of: The attached INS Notice of Action stating to cancel the detainer because citizenship is United States. Notify this office immediately if you do not concur with this action.

☐ Your letter dated _____ requests notification prior to the release of the above named prisoner. Our records have been noted. Tentative release date at this time is _____

☐ I am returning your _____ on the above named inmate who was committed to this institution on _____ to serve _____ for the offense of _____. If you wish your _____ filed as a detainer, please return it to us with a cover letter stating your desire to have it placed as a hold or indicate you have no further interest in the subject.

☐ Other:

☒ CC:

U.S IMMIGRATION AND CUSTOMS ENFORCEMENT
ATTN; DETAINERS/INVESTIGATIONS
101 WEST PARKWAY
CHICAGO, IL 60604

United States of Homeland Security
Bureau of Immigrations and Customs Enforcement
1 N. Powell Lane, Suite 1600
Oakbrook Terrace, IL 60181

Sincerely,
*John White,*
John White,
Inmate Systems Manager

Original - Addressee, Copy - Judgment & Commitment File; Copy - Inmate; Copy - Central File (Section 1); Copy - Correctional Services Department
(This form may be replicated via WP)

(Replaces BP-394(58) dtd FEB 1994)

Immigration Detainer - Notice of Action

Exhibit N - Page 2
Civil Action No. 1:07-cv-00959

File No. 35 467 846
Date:

TO: (Name and title of institution)

U.S. BOP

FORT DIX F-CI

FROM: (INS office address)
United States Department of Homeland Security
Bureau of Immigration and Customs Enforcement
Office of Investigations     1 N. Powell Lane, Ste. 1600
RAC Cherry Hill              Oakbrook Terrace, IL
                                          60181

Name of alien: STANLEY BAPTISTE     BOP # 44102-066

Date of birth: 10/13/66     Nationality: UNITED STATES     Sex: M

**You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:**

☐ Investigation has been initiated to determine whether this person is subject to removal from the United States.

☐ A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on
_____
(Date)

☐ A warrant of arrest in removal proceedings, a copy of which is attached, was served on _____.

☐ Deportation or removal from the United States has been ordered.
_____
(Date)

**It is requested that you:**

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

☐ Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling _____ during business hours or _____ after hours in an emergency.

☐ Please complete and sign the bottom block of the duplicate of this form and return it to this office. ☐ A self-addressed stamped envelope is enclosed for your convenience. ☐ Please return a signed copy via facsimile to _____

Return fax to the attention of _____ , at _____
(Name of INS officer handling case)     (Area code and facsimile number)
_____
(Area code and phone number)

☐ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

☐ Notify this office in the event of the inmate's death or transfer to another institution.

☒ Please cancel the detainer previously placed by this Service on _____.

_____     _____
(Signature of INS official)     Enforcement Agent
                                          (Title of INS official)

**Receipt acknowledged:**

Date of latest conviction: _____
Estimated release date: _____     Latest conviction charge: _____

Signature and title of official: _____

Verified by: Stan Gonsalves, I.E.A
(773) 203-5343 - Oakbrook Terrace, IL
C. Harrell, Records Clerk   SEP 20 2007

Form I-247 (Rev. 4-1-97) N